# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

**RHONDA E. FROST,**

      **Plaintiff,**

**v.**

**CITY OF ATLANTA, GEORGIA, et al.,**

      **Defendants.**

**CIVIL ACTION FILE**

**NO. 1:24-CV-1147-MHC-CCB**

## ORDER

This matter is before the Court on the February 7, 2025, Non-Final Report and Recommendation ("R&R") of United States Magistrate Judge Christopher C. Bly [Doc. 33] recommending that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [Doc. 20] be granted as to all claims except for Plaintiff's Section 1983 claims against the City of Atlanta, Georgia (the "City") (Counts I and III, in part). The Order for Service of the R&R [Doc. 34] provided notice that, in accordance with 28 U.S.C. § 636(b)(1), the parties were authorized to file objections within fourteen (14) days of the receipt of that Order. On February 21, 2025, the City filed its Objections to the R&R ("City's Objs.") [Docs. 36 and 37].[1]

---

[1] The City filed two identical sets of objections.

## I.    BACKGROUND

Frost, who served as the Deputy Director of Public Affairs for the Atlanta Police Department ("APD") from August 2019 to September 10, 2023, brings this action pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e. See generally First Am. Compl. ("Am. Compl.") [Doc. 18]. Frost alleges that, following a shooting incident involving Chaka Zulu Obafemi ("Chaka Zulu") in June 2022 and Chaka Zulu's subsequent arrest on September 13, 2022, Shanae Hall ("Hall"), Frost's daughter, obtained and posted on social media platforms video surveillance footage capturing the incident (along with her own commentary and criticism of APD's (mis)handling of the incident, investigation, and arrest).[2] Id. ¶¶ 27-34. These videos were posted on September 18 and October 9, 2022, and January 9, 2023. Id. ¶¶ 32-34.

Frost alleges that, following these social media posts, she was excluded from meetings regarding the Chaka Zulu incident that involved Darin Schierbaum ("Schierbaum"), Chief of APD, Spikes, other APD commanders, and

---

[2] Chaka Zulu is "a public figure within Atlanta and manager of music artist Christopher 'Ludacris' Bridges." Am. Compl. ¶ 27. Frost alleges that it was known at APD that Hall was Frost's daughter, and that Defendant Chata Spikes ("Spikes"), Director of the Public Affairs Unit ("PAU") and Frost's direct supervisor, knew Hall was friends with Chaka Zulu. Id. ¶¶ 15, 24, 36.

representatives from the office of Mayor Andre Dickens ("Dickens"), as well as unrelated training opportunities, meetings, and events. Id. ¶¶ 38. Frost also alleges that the workplace became "extremely tense," and that she began receiving "vague threats." Id. ¶ 40. On November 30, 2022, Schierbaum requested that Patrick Pendleton ("Pendleton"), the City's Director of Human Resources, launch an investigation into Frost, citing to Frost's "job performance and/or interactions with other employees," despite Frost's lack of disciplinary history and "objectively stellar performance reviews" throughout her employment. Id. ¶¶ 2, 42. Frost was ordered to work from home but was then placed on administrative leave in December 2022 "until the Department of Human Resources inquiry requested by Chief Schierbaum is completed." Id. ¶ 45 (alterations accepted). Frost remained on paid administrative leave until she was terminated, despite Pendleton's recommendation that Frost be returned to work immediately. Id. ¶¶ 46, 49.

Throughout the nine months that Frost was on administrative leave, Schierbaum repeatedly requested that Frost's position be eliminated pursuant to a reduction in force ("RIF"). Id. ¶¶ 53, 56. Defendants came to Frost's home on July 10, 2023, to serve her with written notice of her termination pursuant to the RIF. Id. ¶ 57. Although Frost filed a complaint with the Human Relations Commission, she was officially terminated on September 10, 2023. Id. ¶¶ 59, 61.

Based on the foregoing, Frost initiated the instant action against the City,

Dickens, Schierbaum, Spikes, and Peter Aman, the Chief Administrative Officer of

APD, asserting the following causes of action: (1) a Section 1983 claim for

violation of the First Amendment against all Defendants; (2) a Title VII retaliation

claim against the City; (3) a Section 1983 claim for violation of the Due Process

Clause of the Fourteenth Amendment against all Defendants; (4) intentional

infliction of emotional distress against all Defendants; and (5) libel and slander

against Spikes.  Id. ¶¶ 64-96.

## II.    LEGAL STANDARD

In reviewing a Magistrate Judge's R&R, the district court "shall make a *de

novo* determination of those portions of the report or specified proposed findings or

recommendations to which objection is made."  28 U.S.C. § 636(b)(l).  "Parties

filing objections to a magistrate's report and recommendation must specifically

identify those findings objected to.  Frivolous, conclusive, or general objections

need not be considered by the district court."  United States v. Schultz, 565 F.3d

1353, 1361 (11th Cir. 2009) (internal quotation marks omitted) (quoting Marsden

v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)).  Further, "the district court has

broad discretion in reviewing a magistrate judge's report and recommendation"—it

"does not abuse its discretion by considering an argument that was not presented to

the magistrate judge" and "has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge." <u>Williams v. McNeil</u>, 557 F.3d 1287, 1290-92 (11th Cir. 2009).

Absent objection, the district court judge "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(l), and need only satisfy itself that there is no plain error on the face of the record in order to accept the recommendation. <u>See</u> <u>United States v. Slay</u>, 714 F.2d 1093, 1095 (11th Cir. 1983). In accordance with 28 U.S.C. § 636(b)(l) and Rule 72 of the Federal Rules of Civil Procedure, the Court has conducted a de novo review of those portions of the R&R to which objections have been made and has reviewed the remainder of the R&R for plain error. <u>See</u> <u>id.</u>

## II.    ANALYSIS

### A.    The R&R

The Magistrate Judge found, based on Frost's failure to respond to Defendants' arguments, that Frost had abandoned her claims for intentional infliction of emotional distress and libel and slander. R&R at 12-13. The Magistrate Judge also found that Dickens, Schierbaum, Spikes, and Aman are entitled to qualified immunity as to Frost's Section 1983 claims against them. <u>Id.</u> at 13-20. As to Frost's Title VII retaliation claim, the Magistrate Judge found that

Frost fails to allege causation between her May 27, 2023, EEOC charge (the protected activity) and any adverse action.  Id. at 32-35.  Accordingly, the Magistrate Judge recommends dismissing Frost's Section 1983 claims against the individual Defendants, her claims for intentional infliction of emotional distress and libel and slander, and her Title VII retaliation claims.

However, the Magistrate Judge found that Frost sufficiently alleges the final policymaker theory of municipal liability against the City and that Frost's allegations as to causation are sufficient to support her Section 1983 claim against the City for violation of the First Amendment.  Id. at 20-28.  Finally, the Magistrate Judge found that Frost adequately pleads a procedural due process claim against the City because she sufficiently alleges a constitutionally protected property interest in her continued employment and that she was never afforded the opportunity to be heard regarding the allegations against her before her termination.  Id. at 28-32.

## B.    The City's Objections

### 1.    Whether the Magistrate Judge Erred in Finding that Frost Adequately Alleged Municipal Liability

The City argues that, because neither the Mayor nor the Chief of Police are final policymakers with respect to employment decisions, municipal liability under Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978), cannot lie.  City's Objs. at 3.

According to the City, it is insufficient to allege that a decisionmaker who ordered Frost's termination "has any sort of final policymaking power"; instead, she "must show that the decisionmaker has the power to establish municipal employment policy." Id. at 5. Because Frost does not allege that either Schierbaum or Dickens had final authority over personnel matters or the RIF that terminated Frost's position, and because the Atlanta City Code vests that authority in the Civil Service Board, the City cannot be held liable under Monell. Id. at 7-8.

The Court finds no error in the Magistrate Judge's finding. A plaintiff seeking to hold a local government such as the City of Atlanta liable under Section 1983 cannot rely upon the theory of respondeat superior; instead, liability must stem from the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy . . . ." Monell, 436 U.S. at 694; see also Denno ex rel. Denno v. School Bd. of Volusia Cnty., 218 F.3d 1267, 1276 (11th Cir. 2000) (citing Monell, 436 U.S. at 694). Because a municipality is "liable under section 1983 only for acts for which the [municipality] is actually responsible," Marsh v. Butler Cnty., 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc), a plaintiff "must identify a [municipal] policy or custom that caused [his] injury." Grech v. Clayton Cnty., 335 F.3d 1326, 1329 (11th Cir. 2003) (citation and internal punctuation omitted).

"The final policymaker theory of liability provides a method for establishing

local governmental liability where an individual vested with ultimate, non-

reviewable decision-making authority for the challenged action or policy has

approved or implemented the unconstitutional action at issue." Williams v. Fulton

Cnty. Sch. Dist., 181 F. Supp. 3d 1089, 1124 (N.D. Ga. 2016) (citing Scala v.

Winter Park, 116 F.3d 1396, 1398–1403 (11th Cir. 1997)).

> [W]hether an official had final policymaking authority is a question of
> state law. However, like other governmental entities, municipalities
> often spread policymaking authority among various officers and
> official bodies. As a result, particular officers may have authority to
> establish binding county policy respecting particular matters[.]

Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986).

"To determine if someone is a final policy maker, we look not only to 'state

and local positive law,' but also 'custom and usage having the force of law.'"

Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1292 (11th Cir. 2004)

(quoting McMillian v. Johnson, 88 F.3d 1573, 1577 (11th Cir. 1996); see also Jett

v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989) (quoting St. Louis v.

Praprotnik, 485 U.S. 112, 124 n.1 (1988)) (internal punctuation omitted) (holding

that "whether a particular official has 'final policymaking authority' is a question

of state law," and that a trial judge must "review[] the relevant legal materials,

including state and local positive law, as well as 'custom or usage having the force

of law'" to "identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue").

"[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Id. "[A] municipal official does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review." Morro v. City of Birmingham, 117 F.3d 508, 514 (11th Cir. 1997) (citing cases); see also Holloman, 370 F.3d at 1292 ("[I]n assessing whether a governmental decision maker is a final policy maker, we look to whether there is an actual 'opportunity' for 'meaningful' review." (quoting Oladeinde v. City of Birmingham, 230 F.3d 1275, 1295 (11th Cir. 2000)).

Taking Frost's allegations as true and drawing all reasonable inferences in her favor, as the Court must do on a motion to dismiss, the Court finds that Frost pleads a viable Monell claim for municipal liability based upon the final policymaker theory of liability. As the Magistrate Judge noted, Frost alleges that Schierbaum, as the Chief of Police, has the duty to "formulate and implement rules

and regulations for the operations of the department of police," and that Dickens, as the Mayor, has the duty to "promulgate reasonable rules and regulations governing the conduct of the internal operation of the executive branch and any department thereunder." Am. Compl. ¶ 12. Frost also alleges that, in an internal memo dated June 27, 2023, Schierbaum stated that Frost's "position will be eliminated . . . as a part of the PAU restructuring that has been approved by APD leadership," and that the RIF "is part of the Atlanta Police Department's strategic plan that has been approved by the mayor's office." Id. ¶ 56. At this stage in the litigation, these allegations are sufficient to show that Schierbaum and Dickens acted as final policymakers for the City in terminating Frost.

The City points to Atlanta Code of Ordinances § 114-79(e)(2), which provides that the Civil Service Board has the authority to "[h]old hearings when requested by an employee or an appointing authority on final demotions, suspensions, dismissals or other such adverse actions with reference to the classified service and have power to make final determinations and dispositions in such matters." ATLANTA, GA., CODE § 114-79(e)(2). However, the text of this ordinance belies the City's arguments. The Ordinance provides that the Civil Service Board holds hearings regarding "final demotions, suspensions, dismissal, or other such adverse actions." Id. An adverse action is defined in the Atlanta

Code as "disciplinary action taken for cause by a department head or designee which results in suspension without pay, demotion or dismissal of [an employee]." Id. § 114-502. Notably, the definition of adverse action specifically excludes "actions which result from challenging the decision to implement or the scope of a reduction in force . . . ." Id. Furthermore, the Atlanta Code provides that employees affected by a RIF "shall have the right to appeal to the civil service board a failure to follow procedure in the administration of the RIF, but shall not have the right to appeal the reason for this reduction." Id. § 114-379(j). Instead, "the Atlanta ordinance specifically permits the Mayor or a designee to review personnel actions that are not reviewable by the board." Marks v. City of Atlanta, No. 1:05-CV-0079-CAP-AJB, 2007 WL 9700632, at *35 (N.D. Ga. Jan. 10, 2007), R&R adopted No. 1:05-CV-79-CAP, 2007 WL 9700657 (N.D. Ga. Mar. 21, 2007) (citing ATLANTA, GA., CODE § 114-81 ("If any personnel problem or personnel action which is not specifically covered by this article occurs, the mayor or the mayor's designee shall be authorized to resolve such problem or action through the application of this article and in keeping with its intent and the Charter.")).

Here, Frost alleges that she was terminated from her employment due to a RIF that was implemented by Schierbaum and approved by the Mayor. Her claims arising out of her termination are not predicated on the City's failure to follow the

procedure for administering the RIF.  Instead, the claims are based on the <u>reason</u> for the RIF—that it was allegedly a retaliatory act for her daughter's actions and a means to circumvent Frost's due process rights.  Thus, the Court rejects  the City's argument that the Civil Service Board was the final policymaker with respect to Frost's RIF.   Frost has adequately alleged the final policymaker theory of <u>Monell</u> liability against the City, and the Magistrate Judge did not err in finding the same. The City's Objection is **OVERRULED**.

> **2.    Whether the Magistrate Judge Erred in Finding that Frost Adequately Alleged Causation**[3]

The City objects to the Magistrate Judge's finding that Frost sufficiently alleges the causation element of her First Amendment claim.  Specifically, the City argues that any "potential intervening acts," including being excluded from meetings, trainings, and events, and receiving vague threats "are neither material nor significant intervening acts and therefore cannot create a causal link between the alleged protected activity and Plaintiff's termination."  City's Objs. at 10-11. The City also argues that "the final act of alleged retaliation"—being placed on

---

[3] The City raises no objections to the Magistrate Judge's findings regarding the merits of Frost's Section 1983 claim based on denial of procedural due process (Count III).  <u>See generally</u> City's Objs.  Accordingly, the Court limits its de novo review of the R&R to the Magistrate Judge's findings regarding Frost's First Amendment claim.

paid administrative leave—"took place over 3 months after the alleged protected speech and 9 months before Plaintiff was actually terminated." Id. at 11. According to the City, this lapse of time makes any connection between the paid leave and the termination "far too attenuated." Id. at 11-12.

"To succeed on a First Amendment retaliation claim, the plaintiff must show that the adverse employment action was causally related to the protected speech." Brillinger v. City of Lake Worth, 317 F. App'x 871, 878 (11th Cir. 2008) (citing Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)); see also Anderson v. Burke County, 239 F.3d 1216, 1219 (11th Cir. 2001) (requiring, in part, that a plaintiff show that "the employee's speech played a substantial part in the employer's decision to demote or discharge the employee"). The United States Court of Appeals for the Eleventh Circuit has stated that this causation element is a "question[] of fact designed to determine whether a retaliatory motive was the legal cause of the challenged employment decision." Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1564 (11th Cir. 1995). And because this case is before the Court on a motion to dismiss, Frost "need only allege sufficient facts to allow for a facially plausible inference that [Hall's social media posts criticizing APD's conduct with respect to Chaka Zulu's arrest] were a substantial factor in causing the adverse employment actions." Skolweck v. Mayor & Councilmembers

of Garden City, No. 4:12-CV-227, 2012 WL 5183201, at *6 (S.D. Ga. Oct. 18, 2012) (citing Anderson, 239 F.3d at 1222; Iqbal, 556 U.S. at 678).

Frost alleges that Hall posted videos on social media platforms criticizing the Chaka Zulu arrest on September 18 and October 9, 2022, and January 9, 2023. Am. Compl. ¶¶ 32-34. Frost alleges that she was immediately excluded from any meetings regarding the social media videos and subsequently excluded from meetings, training opportunities, and events. Id. ¶¶ 37-38. On November 30, 2022, just over two months after the first social media post and one month after the second post, Schierbaum requested an investigation of Frost, which resulted in Frost being placed on administrative leave. Id. ¶¶ 43-45. Frost alleges that this investigation went on for nine months despite repeated conclusions that Frost had violated no policies or rules. Id. ¶ 46. Pendleton repeatedly recommended that Frost be returned to work. Id. ¶¶ 49, 53 (detailing the investigation into Frost and noting that Hall's negative statements about the APD raised "cause for concern"). Despite these recommendations (or, as Frost alleges, to circumvent these recommendations), Schierbaum requested and Dickens approved a RIF eliminating Frost's position, and only Frost's position, in June or July 2023. Id. ¶¶ 56-58. Finally, Frost alleges that her performance evaluations were consistently stellar throughout her employment. Id. ¶¶ 25-26. The Court finds that these allegations

"identify 'a sequence of events from which one could . . . plausibly infer a retaliatory motive'" so as to adequately allege the causation element of Frost's retaliation claim. Bailey v. City of Douglasville, No. 1:13-CV-00941-RWS-ECS, 2015 WL 12867012, at *10 (N.D. Ga. Feb. 4, 2015), R&R adopted, No. 1:13-CV-0941-RWS, 2015 WL 12867011 (N.D. Ga. Mar. 16, 2015), aff'd sub nom. Bailey v. Wheeler, 843 F.3d 473 (11th Cir. 2016) (quoting Smith v. Fla. Dep't of Corrs., 375 F. App'x 905, 911 (11th Cir. 2010)). At this early stage in the litigation, the Court agrees with the Magistrate Judge that Frost's allegations are sufficient to state a plausible claim for First Amendment retaliation pursuant to Section 1983. The arguments advanced and cases cited by the City do not convince this Court otherwise. The City's Objection is **OVERRULED**.

## III.    CONCLUSION

For the foregoing reasons, and after a consideration of Defendant City of Atlanta, Georgia's objections and a de novo review of the record, it is hereby **ORDERED** that Defendant's Objections to the R&R [Docs. 36 and 37] are **OVERRULED**. As to the remainder of the R&R to which no objections have been filed, this Court has reviewed it and the record for plain error and finds none.

The Court **APPROVES and ADOPTS** the Non-Final Report and Recommendation [Doc. 33] as the Opinion and Order of this Court. It is hereby

**ORDERED** that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [Doc. 20] is **GRANTED IN PART AND DENIED IN PART**. The Motion is **GRANTED** as to Plaintiff's Section 1983 claims against Defendants Andre Dickens, Darin Shierbaum, Chata Spikes, and Peter Aman, and as to Plaintiff's claims for retaliation under Title VII, intentional infliction of emotional distress, and libel and slander, which are **DISMISSED**. The Motion is **DENIED** as to Plaintiff's Section 1983 claims against the City of Atlanta, Georgia.

The Clerk is directed to **RESUBMIT** this case to United States Magistrate Judge Christopher C. Bly for further proceedings.

**IT IS SO ORDERED** this _3rd_ day of March, 2025.

MARK H. COHEN
United States District Judge